UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **SHAMEKA GRANT THOMAS, DEVIN WHITE, CARNIKQUA THOMAS, ARNIQUIA HARDEN o/b/o CARDEN HARDEN** | **CIVIL ACTION NO.** |
| **Versus** | |
| **NATCHITOCHES PARISH LAW ENFORCEMENT DISTRICT, SHERIFF STUART WRIGHT, OTIS BARNUM, KATHY M. CHILDRESS, LISA GEORGE, WILLIE CLARK, MICHAEL OLIVER, CHRISTOPHER ORSBORN, AND TAWANA BERNSTINE** | **JUDGE:**  <br><br><br><br><br>**MAGISTRATE JUDGE:** |

## COMPLAINT

Plaintiffs, the surviving spouse of Carlos Thomas, Shameka Thomas, and the surviving children of Carlos Thomas, Devin White, Carnikqua Thomas and Arniquia Harden o/b/o the minor child, Carden Harden, by and through undersigned counsel, complaining of the Defendants, alleges and says as follows:

### Preliminary Statement

Carlos Thomas was a federal inmate confined at the Natchitoches Parish Detention Center in the State of Louisiana. Plaintiffs bring this civil rights action to redress the deprivation under color of state law of rights, privileges and immunities secured to Thomas by the provisions of the fifth, eighth, ninth, and fourteenth amendments to the United State Constitution. Thomas was denied access to prompt, adequate and competent medical treatment, care and facilities, which ultimately led to his death. Thomas alleges further that the acts and/or policies and practices of the defendants and their employees are knowing, deliberate, and intentional, in disregard for the health and well-being of Thomas and that such acts, policies, and practices are shocking to the conscience

of civilize persons and intolerable in a society purportedly governed by laws and considerations of due process.

## Jurisdiction and Venue

1. Plaintiffs brings this action and seeks compensatory and punitive damages and other relief arising under 42 U.S.C. §1983 and 1988, the fourteenth amendment to the United States Constitution, Louisiana's wrongful death statute, and other statutory law for the unlawful and unconstitutional, willful and wanton conduct that resulted in Carlos Thomas' death on November 10, 2022.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 and 18 U.S.C. §1965 because the events that form the basis of this suit occurred in Natchitoches Parish, State of Louisiana.

## Parties
### *Plaintiffs*

3. Plaintiff, Shameka Grant Thomas, is the surviving spouse of Carlos Thomas ("Mrs. Thomas").

4. Plaintiffs, Devin White, Carnikqua Thomas and Arniquia Harden o/b/o the minor child, Carden Harden, are the surviving children of Carlos Thomas.

### *Natchitoches Parish Law Enforcement District*

5. Natchitoches Parish Law Enforcement District ("NPLED") is a body politic in which it has capacity of suing and being sued. NPLED is, and was at all relevant times, responsible for the establishment and operation of the Natchitoches Parish Detention Center ("NPDC"), a local confinement facility, and has a duty to make proper rules and regulations for the operation of the NPDC and to supervise the enforcement of such rules and regulations.

### *The Sheriff*

6. Sheriff Stuart Wright ("Sheriff") is a resident of Natchitoches Parish, Louisiana, and at all times relevant to this action, was the elected Sheriff of Natchitoches Parish. The Sheriff is sued in this individual capacity and in his official capacity, and at all relevant times, was"

   a. In control of the NPDC;

   b. The final decision making authority over law enforcement policies and personnel in his office;

   c. Directly responsible for the appointment, retention, supervision, and conduct of his officers, nurses, deputies, employees and agents;

   d. Acting in the course and scope of his official duties as the Sheriff of Natchitoches Parish and under color of state law;

   e. Responsible for the care and the custody of NPDC;

   f. Responsible for the care and custody of inmates and detainees in the NPDC; and

   g. Vicariously liable for the actions and/or inactions of his agents, employees, officers, managers, nurses, supervisors, jailors and/or deputies.

### *The Medical Director*

7. Otis Barnum, DO, ("Dr. Barnum") was contracted to act as a Medical Advisor to the NPLED, who operates the NPDC and provide primary care physician services to detainees at NPDC. At all relevant times, Dr. Barnum, was charged with the supervision of the nurses in NPDC, including, but not limited to, the Nursing Defendants, was charged with the care, custody and safekeeping of inmates and detainees at NPDC, was an agent and employee of the Sheriff, or in the alternative, NPLED. Dr. Barnum acted in an advisory role for

NPLED to keep medical policies and procedures up to date and to supervise NPDC of standard protocol for nursing in accordance with state guidelines.

### *The Detention Defendants*

8. Upon information and belief, Defendants, Michael Oliver, Christopher Orsborn and Tawana Bernstine, at all times relevant to this action, were employed by the Sheriff as certified law enforcement officers with NPLED. Each are sued in his or her individual capacity and in his or her official capacity as an officer of NPLED. All were assigned to the NPDC on November 9 and 10, 2022. At all relevant times herein, all were charged with the care, custody and safekeeping of detainees, including Carlos Thomas, and were agents and employees of the Sheriff. Said Defendants are collectively herein referred to as the "Detention Defendants."

### *The Nursing Defendants*

9. Kathy M. Childress, LPN ("LPN Childress") who was employed by NPSO to assess, diagnoses, and treat detainees held in its correctional facilities;

10. Lisa George, LPN, ("LPN George") who was employed by NPSO to assess, diagnose, and treat detainees held in its correctional facilities;

11. Willie Clark, RN, ("RN Clark") who was employed by NPSO to assess, diagnose, and treat detainees as well as supervise and manage its Corrections Medical Department, including LPN Childress and LPN George, and act as Health Service Coordinator at the NPDC;

12. LPN Childress, LPN George, and RN Clark are at all times relevant herein, nurses duly licensed under the laws of the State of Louisiana and health care providers practicing in their profession within Natchitoches Parish, as agents and employees of the Sheriff, in his official capacity as the Sheriff of Natchitoches Parish, or in the alternative, as agents and

employees of NPLED. Each of the Nursing Defendants are being sued in his or her individual capacity and official capacity. All three were assigned to NPDC at all relevant times herein, and were charged with the care, custody, and safekeeping of inmates and detainees, including Carlos, and were agents and employees of the Sheriff and/or NPLED.

13. LPN Childress, LPN George, and RN Clark are collectively referred to herein as the Nursing Defendants.

**Relevant Facts**

14. On November 10, 2022, Carlos died as a direct and proximate result of the wrongful actions and omissions of the Defendants. His death could easily have been avoided by the provision of basic medical attention, recognition and management of a life-threatening condition, a hypertensive crisis, leading to a ruptured aneurysm depriving Carlos of loss of chance of survival and ultimately resulting in his death.

15. On October 14, 2022, Carlos was received at NPDC as an inmate. As part of the initial intake process, at 10:50 am, LPN Childress conducted an Initial Intake Screening but failed to recognize Carlos' hypertensive state despite a blood pressure reading of 151/106. A normal blood pressure reading is 120/80 mm hg or lower, and hypertension is diagnosed when the reading consistently exceeds 130/80 mm hg.

16. Thereafter, Carlos did not receive any follow-up care or investigation related to the chronic disease of hypertension. There are no records of additional blood pressure measurements to determine if Carlos was chronically hypertensive and in need of follow-up care.

17. Even though Carlos thought and reported that he had no medical problems at intake, his physical data as recorded by LPN Childress, indicated he could be hypertensive and required follow-up.

18. NPS 17 Standing Orders for Hypertension, which was written by Dr. Barnum, states that blood pressure should be monitored weekly. There is no documented record in Carlos' medical history that this was done.

19. On November 9, 2022, Lt. Oliver and Dy. Bernstine were called to assist Carlos in the L-Dorm, who was complaining of pain in the upper right side of his chest and all of his back.

20. He was taken to the sick bay and seen by LPN George at 8:26 pm when his blood pressure was measured at 209/111. At this time, Carlos was also complaining of severe chest and back pain, which started when he stood up following a telephone call with his wife.

21. LPN George gave Carlos Ibuprofen 800 mg once and sent back to the dormitory with the assurance that he would see a doctor the next day.

22. A blood pressure reading higher than 180/120 mm hg is considered a hypertensive emergency or crisis, requiring immediate medical intervention.

23. Throughout the night, Lt. Oliver and Dy. Bernstine observed Carlos laying down on the floor beside his bunk where different inmates were attempting to attend to Carlos by applying pressure and massaging his back. Although Carlos told the Detention Defendants that his inmates' assistance was helping, the Detention Defendants failed to secure the necessary medical attention.

24. That same night, Carlos told Dy. Orsborn that "my chest hurts really badly." However, Dy. Orsborn failed to secure the necessary medical attention and treatment for Carlos and continued on with preparation for lock down showers.

25. On November 10, 2022 at 5:30 a.m., Carlos reported continued pain, and LPN George dispensed Tylenol and told Carlos to rest.

26. On November 10, 2022 at 8:15 a.m., LPN George called L-dorm, where Carlos was housed, and told Officer Lowring to have Carlos put in a sick-call about what was bothering him since he was seeing MD today.

27. On November 10, 2022 at 8:27 a.m., Carlos was put in a "sick call" and reported "back spasms, really, really bad!"

28. On November 10, 2022, at 10:00 a.m., Shameka Thomas, having been advised of Carlos' condition, spoke to RN Clark, expressed the urgent need for medical attention and asked that Carlos be transported to the emergency room.

29. In response, RN Clark examined Carlos, palpitated his back and ribcage, which were reported tender to the touch and called Dr. Barnum's office about the complaint. However, there is no documentation of repeated vital signs, including blood pressure, or documentation by RN Clark informing Dr. Barnum of Carlos' previous high blood pressure.

30. When a member of Dr. Barnum's staff returned the call, an orders for steroids was given, which likely pushed his blood pressure higher. Carlos was told Dr. Barnum would follow up with him after lunchtime and was returned to his dorm.

31. On November 10, 2022 at approximately 10:48 a.m., Carlos was found unresponsive, slumped over on his bed in severe pain.

32. EMS was called and Carlos was transported to Natchitoches Regional Medical Center, where he was pronounced dead.

33. According to the autopsy report, the cause of death was massive exsanguination due to aortic dissection.

34. The wrongful and intentional acts and omissions of the Detention Defendant, Nursing Defendants, Dr. Barnum, the Sheriff, and NPLED together with their negligence resulted in Carlos' death.

## Count I
### Violation of Federal Civil Rights by the Detention Defendants and the Nursing Defendants in their individual capacities – 42 U.S.C. 1983 and 1988

35. The allegations contained herein above are incorporated by reference.

36. The Detention Defendants and the Nursing Defendants acted individually under the color of state law, customs, practices, usage or policy at all times mentioned herein as detention officers, nurses, and/or such other personnel and/or employees and had certain duties imposed upon them with regard to Carlos.

37. The Detention Defendants and the Nursing Defendants violated Carlos' rights under the United States Constitution, including rights secured by the eighth and fourteenth amendments, and/or federal law by intentionally, willfully, maliciously and with conscious and deliberate indifference, failing to secure prompt, adequate and reasonable medical care to Carlos when they knew or should have known that Carlos faced a substantial risk of harm, and by disregarding such risks by failing to take reasonable measures to abate it, all of which were readily available had they transported him to a hospital for a proper medical work-up.

38. The Detention Defendants and Nursing Defendants all had actual and/or constructive knowledge that Carlos was suffering from a hypertensive crisis on November 9, 2022, and required immediate medical attention which they knew they were incapable of providing. Not only did the Detention Defendants and the Nursing Defendants not secure necessary medical treatment for Carlos but they placed Carlos in his cell where his condition was

unsupervised, effectively unmonitored and dependent on Carlos' fellow inmates to attend to him at a time when he required urgent medical attention, depriving him of a chance of survival and ultimately died.

39. The right to reasonable and necessary medical treatment was a clearly established constitutional right, pursuant to the eighth and fourteenth amendments to the United States Constitution, and is a right which any reasonable detention officer or nurse in their position would have known.

40. As a direct and proximate result of the deprivation of Carolos' constitutional; and federal rights as alleged herein, Carlos succumbed to his condition and died a preventable and completely unnecessary death.

41. Plaintiffs, on behalf of the Estate of Carlos Thomas, is entitled to damages reasonable in the premise to punish the Detention Defendants and Nursing Defendants for their illegal, unconstitutional, egregiously wrongful, reckless, and willful misconduct and to deter such conduct by others.

### Count II
### Violation of Federal Civil Rights by the Sheriff and Dr. Barnum in their individual and official capacities – 42 U.S.C. §1983 and 1988

42. The allegations contained herein above are incorporated by reference.

43. The Sheriff was, at all times relevant herein, responsible for the formulation and execution of policies regarding the custody, care and safekeeping of the inmates at NPDC.

44. Dr. Barnum was, at all times relevant herein, responsible for the formulation and execution of policies regarding the medical care provided to inmates and detainees at NPDC.

45. Upon information and belief, at all relevant times herein, the Sheriff and Dr. Barnum, acting under color of state law, had in effect de facto policies, practices, and customs that

were a direct and proximate cause of the wrongful, unconstitutional, and unlawful conduct of the officers and/or nurses working at NPDC, as herein alleged, including, inter alia:

a. The failure to adequately train, supervise, instruct, or monitor officers and/or nurses assigned to NPDC in the proper method for evaluating inmates and detainees;

b. The failure to adequately train, supervise, instruct or monitor officers and/or nurses assigned to NPDC in the proper methods for assisting and treating inmates and detainees with serious medical conditions;

c. The failure to see that proper methods were being employed to evaluate the conditions of inmates and detainees in NPDC;

d. The failure to see that proper methods were being employed to assist and treat inmates and detainees in NPDC suffering from hypertensive crisis;

e. The failure to properly supervise officers and/or nurses assigned to NPDC;

f. The failure to see that officers and/or nurses assigned to NPDC supervised inmates and detainees sufficiently to be at all times informed of the inmates and detainees' general health and emergency medical needs;

g. The failure to properly train and/or supervise agents, employees, nurses and officers so that inmates and detainees, including Carlos Thomas, were provided with protection and care while incarcerated;

h. In failing to draft and/or institute proper policies and/or procedures necessary to see that inmates and detainees are provided appropriate, necessary and adequate medical care and protection when experiencing a hypertensive crisis or emergency;

    i. If such policies/procedures exist, in failing to follow them in providing for the appropriate medical care, protection and care necessary to ensure Carlos Thomas' well-being;

    j. The failure to implement proper and reasonable policies and procedures regarding the evaluation, monitoring, supervision, observation and housing of inmates and detainees in NPDC suffering hypertensive crisis;

    k. The failure to see that officers and/or nurses with NPDC complied with existing policies and procedures;

    l. The failure to see that the officers and/or nurses assigned to NPDC complied with applicable requirements for providing care to inmates in a hypertensive crisis;

    m. The failure to see that officers and/or nurses assigned to NPDC were not assigned other duties that would interfere with the continuous supervision, custody, or control or inmates and detainees; and

    n. Other policies, customs, and practices to be identified during the course of discovery and/or trial.

46. Upon information and belief, the Sheriff and Dr. Barnum had actual and/or constructive knowledge that the officers, nurses, supervisors, agents and/or employees in NPDC were, and had been prior to November 10, 2022, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to inmates and detainees such as Carlos Thomas.

47. As a direct and proximate result of said policies, practices and customs, Carlos Thomas was denied his rights under the United States Constitution, including rights secured by the eighth and fourteenth amendments and/or federal law.

48. The right to reasonable and necessary medical treatment was a clearly established constitutional right, pursuant to the eighth and fourteenth amendments to the United States Constitution, and is a right which any reasonable detention officer or nurse in their position would have known.

49. As a direct and proximate result of the deprivation of Carolos' constitutional; and federal rights as alleged herein, Carlos succumbed to his condition and died a preventable and completely unnecessary death.

50. Plaintiffs, on behalf of the Estate of Carlos Thomas, is entitled to damages reasonable in the premise to punish the Detention Defendants and Nursing Defendants for their illegal, unconstitutional, egregiously wrongful, reckless, and willful misconduct and to deter such conduct by others.

## Count III
## Violation of Federal Civil Rights by NPLED – 42 U.S.C. §1983 and 1988)

51. The allegations contained herein above are incorporated by reference.

52. NPLED was, at all times relevant herein, responsible for the formulation and execution of policies regarding the provisions of medical care to inmates and detainees in NPDC.

53. Upon information and belief, at all relevant times herein, NPLED, acting under color of state law, had in effect de facto policies, practices and customs that were a direct and proximate cause of the wrongful, unconstitutional and unlawful conduct of officers and nurses working in NPDC, as herein alleged, including, inter alia:

    a. The failure to implement proper plans, policies, and/or procedures necessary to see that inmates and detainees are provided appropriate, necessary and adequate medical care and protection from emergency and perilous medical conditions;

    b. The failure to draft and/or institute proper plans, policies, and/or procedures designed to protect the health and welfare of inmates and detainees at NPDC;

    c. The failure to draft and/or institute proper plans, policies, and/or procedures regarding medical supervision of inmates and detainees at NPDC;

    d. The failure to draft and/or institute proper plans, policies, and/or procedures regarding emergency medical care for inmates and detainees at NPDC to the extent necessary for their health and welfare;

    e. If such policies/procedures exist, in failing to see that such policies and procedures were following;

    f. The failure to implement proper and reasonable policies and procedures regarding the evaluation, monitoring, supervision, observation and housing of inmates and detainees in NPDC in need of medical care, including, and especially inmates with high blood pressure suffering from a hypertensive crisis or emergency; and

    g. Other policies, customs, and practices to be identified during the course of discovery and/or trial.

54. As a direct and proximate result of said policies, practices and customs, Carlos Thomas was denied his rights under the United States Constitution including rights secured by the eighth and fourteenth amendments, and/or federal laws.

55. As a direct and proximate result of the deprivation of Carlos Thomas' constitutional and federal rights as alleged herein, Carlos Thomas died a preventable and totally unnecessary death, thereby entitling his spouse and children to damages reasonable in the premise.

### Count IV
### Wrongful Death – The Detention Defendants and the Nursing Defendants, in their individual capacities

56. The allegations contained herein above are incorporated by reference.

57. The Detention Defendants and the Nursing Defendants each owed the following duties to Carlos Thomas: to perform their duties, and to see that other detention officers, nurses, agents and employees assigned to NNPDC performed their duties in such a way as to avoid placing Carlos in danger of injury or death; to be present and available to provide continuous supervision of Carlos to see that his custody was secure and that he would be protected; to supervise Carlos sufficiently in order to maintain safe custody and control of Carlos and to be at all times information of Carlos' general health and emergency medical needs; and to secure emergency medical care in the event that Carlos suffered a medical emergency.

58. The Nursing Defendants each owed the following additional duties to Carlos: to care for and treat him using reasonable and ordinary care in accordance with the skill, training, and experience of nurses practicing in the same or similar communities; to exercise reasonable care and diligence in the application of their knowledge and skill to Carlos' care; and to use their best judgment in the treatment and care of Carlos, which would have included transporting him to a hospital where he could have received proper care.

59. The Detention Defendants and the Nursing Defendants collectively and individually breached these duties with regard to Carlos in various ways, including, but not limited to, the following:

    a. In failing to provide or secure necessary and adequate medical attention to Carlos;
    b. In failing to use even slight care and caution in safekeeping Carlos;

c. In failing to sufficiently monitor Carlos during his detainment so as to determine his safety and well-being;

d. In failing to properly train and/or supervise agents, employees, nurses and officers under their command in the proper methods for identifying inmates and detainees suffering hypertensive crisis or emergency;

e. In failing to property train and/or supervise agents, employees, nurses and officers under their command to see that inmates and detainees, including Carlos, are provided with protection and care while incarcerated or detained;

f. In failing to draft and/or institute proper policies and/or procedures necessary to see that inmates and detainees are provided appropriate medical care and protection from injury or death during a hypertensive crisis;

g. If such policies/procedures exist, in failing to follow the same in providing for the appropriate medical care, protection, and care necessary to ensure Carlos' well-being;

h. In failing to heed or respond to information and reports from Mrs. Thomas so as to determine the severity and significance of Carlos' medical condition and complaints and so as to aide in procuring and administering the necessary treatment, monitoring and supervision of Carlos;

i. In conducting themselves in an egregious and arbitrary manner by denying him treatment;

j. In knowingly, deliberately and consciously denying appropriate medical treatment, monitoring and supervision of Carlos;

    k. In failing to take the appropriate steps to provide the proper and sufficient medical treatment, monitoring and supervision of Carlos when they had actual and/or constructive knowledge of Carlos' condition and his prior screenings for high blood pressure;

    l. In failing to properly communicate with detention officers, nurses and/or physicians regarding Carlos' condition;

    m. In failing to properly coordinate the evaluation, monitoring and supervision of Carlos; and

    n. In other ways to be identified during the course of discovery and/or trial.

60. The negligent, grossly negligence, willful and wanton and reckless acts and omissions of the Detention Defendants and the Nursing Defendants, as alleged herein, constitute the proximate cause of the death of Carlos, therefore, entitling Plaintiffs to all damages reasonable in the premise.

61. The acts and omissions of the Detention Defendants and the Nursing Defendants were malicious, intentional, unreasonable, needless, willful and wanton, and these defendants acted with conscious and reckless disregard for the lives and safety of others, and therefore, they are not entitled to any form of immunity.

## Count V
## Wrongful Death – NPLED, Sheriff and Dr. Barnum – in their individual and official capacities

62. The allegations contained herein above are incorporated by reference.

63. The Sheriff and Dr. Barnum owed the following duties to Carlos Thomas: to see that detention officers, nurses, agents and/or employees assigned to NPDC performed their duties in such a way as to avoid placing Carlos in danger of injury or death; nurses, agents,

and employees assigned to NPDC would be present and available to provide continuous supervision of Carlos so that his custody would be secure and that he would be protected; to see that detention officers, nurses, agents and/or employees assigned to the NPDC would supervise Carlos sufficiently in order to maintain safe custody and control of Carlos and to be at all times informed of Carlos' general health and emergency needs; to provide transportation to Carlos to a hospital where he could be properly worked-up; and to see that emergency medical care would be provided in the event Carlos suffered a medical emergency.

64. The Sheriff and Dr. Barnum breached these duties described herein in various ways, including, but not limited to, the following:

    a. In failing to adequately train, supervise, instruct, or monitor officers and/or nurses assigned to NPDC in the proper method for evaluating inmates and detainees;

    b. In failing to adequately train, supervise, instruct, or monitor officers and/or nurses assigned to NPDC in the proper methods for identifying inmates and detainees in need of serious medical attention;

    c. In failing to adequately train, supervise, instruct, or monitor officers and/or nurses assigned to NPDC in the proper methods for assisting and treating inmates and detainees with serious medical conditions;

    d. In failing to establish appropriate standing orders for inmates exhibiting signs of a hypertensive crisis;

    e. In failing to see that proper methods were being employed to evaluate inmates and detainees in NPDC;

    f.   In failing to see that proper methods were being employed to assist and treat inmates and detainees in NPDC with serious medical conditions;

    g.   In other ways to be identified during the course of discovery and/or trial.

65. At the time Dr. Barnum, the Detention Defendants, and the Nursing Defendants committed the negligent, grossly negligent, willful and wanton and reckless acts and omissions described herein, they were acting within the course and scope of their employment and/or agency with the Sheriff, or alternatively NPLED. As such, they are liable for the conduct of Dr. Barnum, the Detention Defendants and the Nursing Defendants, and such conduct is imputed to the Sheriff and/or NPLED through the doctrines of agency, vicarious liability and respondent superior.

66. As a direct and proximate result of the negligent, grossly negligent, willful and wanton and reckless acts and omissions, as described herein, of the Sheriff, Dr. Barnum and those of the Detention Defendants and the Nursing Defendants which are imputed to the Sheriff and NPLED, Carlos was deprived of a chance of survival and died a preventable and totally unnecessary death, and therefore entitling the Plaintiffs to all damages reasonable in the premise.

## Damages

67. At the time of his death, Carlos Thomas was 45 years of age. Carlos is survived by his wife, Shameka Thomas, and children, Devin White, Carnikqua Thomas and Arniquia Harden o/b/o Carsen Harden, and shared bonds of genuine love and affection with all his family, By reason of the wrongful, intentional and negligent acts and omissions of all defendants, as heretofore alleged, Carlos' family has been forever deprived of his society

and their relationship with Carlos. Additionally, Shameka Thomas has been deprived of support, assistance and society.

68. Plaintiffs are entitled to and seeks all damages reasonable in the premise, including compensatory damages, medical and burial expenses, loss of consortium and grief, mental anguish and pain, pecuniary loss, grief and loss of companionship, love, affection, and nurture, past and future loss of wages, earning capacity, loss of services and support, arising out of the wrongful death of Carlos Thomas, as well as for the conscious pain and suffering Carlos Thomas experienced prior to his death, Carlos Thomas and the Plaintiffs' loss of enjoyment of life, along with punitive damages, attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, the surviving spouse of Carlos Thomas, Shameka Thomas, and the surviving children of Carlos Thomas, Devin White, Carnikqua Thomas and Arniquia Harden o/b/o the minor child, Carden Harden, prays that this Court grant her the following relief against the named Defendants, jointly, severally, and *in solido* and for all damages reasonable in the premise and for any and all other just and equitable relief reasonable in the premises and for any and all orders of the Court necessary.

**RESPECTFULLY SUBMITTED:**


**s/ Roy H. Maughan, Jr.**
**ROY H. MAUGHAN, JR., #17672**
**NAMISHA D. PATEL, #31911**
**JOSHUA D. ROY, #34743**
**CONNOR S. THOMAS, #40567**
**634 CONNELL'S PARK LANE**
**BATON ROUGE, LOUISIANA 70806**
**TELEPHONE: (225) 926-8533**
**FAX: (225) 926-8556**

**s/ J. Rodney Baum**
**J. RODNEY BAUM, #20689**
**830 MAIN STREET**
**BATON ROUGE, LA 70802**
**PHONE: (225)387-1142**
**FAX: (225) 336-4667**
**rodney@rbaumlaw.com**