UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SHAMEKA GRANT THOMAS ET AL | CIVIL ACTION NO. 23-1614 |
| VERSUS | JUDGE EDWARDS |
| STUART WRIGHT ET AL | MAG. JUDGE PEREZ-MONTES |

**MEMORANDUM RULING AND ORDER**

Before the Court is a Motion to Dismiss filed by Defendant Otis Barnum, M.D. ("Defendant" or "Dr. Barnum") for lack of subject matter jurisdiction and failure to state a claim.[1] Dr. Barnum requests the Court dismiss all claims against him in the instant suit. The Motion is unopposed by Shameka Grant Thomas, Devin White, Carnikqua Thomas, and Arniquia Harden o/b/o Carden Harden (collectively "Plaintiffs").

After careful consideration of the Motion and the applicable law, the Motion is **GRANTED**. Plaintiffs' claims against Dr. Barnum pursuant to 42 U.S.C. § 1983 are dismissed with prejudice. Plaintiffs' state law malpractice claims against Dr. Barnum are dismissed without prejudice.

I. **BACKGROUND**

Carlos Thomas ("Thomas" or "Decedent") became an inmate at the Natchitoches Parish Detention Center ("NPDC") on October 14, 2022.[2] Nurse Kathy

---

[1] R. Doc. 19.
[2] R. Doc. 1 at ¶ 15.

Childress conducted an intake screening of Thomas and recorded his blood pressure of 151/106.[3] Thomas did not report any medical problems during intake.[4]

On November 9, 2022, Thomas reported chest and back pain.[5] Lieutenant Michael Oliver ("Oliver") and Deputy Tawana Bernstine ("Bernstine"), who are employed by Sheriff Stuart Wright of the Natchitoches Parish Law Enforcement District ("NPLED"), were called to the L-dorm of the NPDC where Thomas was housed to assist him after Thomas reported of pain in the upper right side of his chest and all of his back.[6] Oliver and Bernstine reported Thomas' complaint to nurse Lisa George ("Nurse George") who gave Thomas an ibuprofen assured him he would see a doctor the next day and sent him back to the dormitory.[7] That night, other inmates in Thomas' dorm attempted to soothe his pain by applying pressure to and massaging Thomas' back.[8] Sometime during that night, Thomas also reported his chest pain to Christopher Orsborn, another deputy with the NPLED.[9]

On November 10, 2022, Nurse George gave Thomas a Tylenol and told him to rest.[10] Nurse George had Thomas place a "sick call" to explain what was ailing him since he was scheduled to see a doctor that day.[11] In the call, Thomas reported he had "bad spasms, really, really bad!"[12] Later that morning around 10:00am, Plaintiff Shameka Thomas, having been advised of Thomas' condition, called the NPDC and

---

[3] *Id.*
[4] *Id.* at ¶ 17.
[5] *Id.* at ¶ 19.
[6] *Id.*
[7] *Id.* at ¶ 21.
[8] *Id.* at ¶ 23.
[9] *Id.* at ¶ 24.
[10] *Id.* at ¶ 25.
[11] *Id.* at ¶ 26.
[12] *Id.* at ¶ 27.

spoke to nurse Willie Clark ("Nurse Clark").[13] Nurse Clark then assessed Thomas, palpating his back and ribcage and finding it tender to the touch.[14] Nurse Clark called Dr. Barnum's office, and Dr. Barnum ordered the administration of steroids and set a follow up with Thomas after lunch.[15] Later that morning at 10:48 a.m., Thomas was found unresponsive.[16] EMS was called by jail staff, and Thomas was transported to Natchitoches Regional Medical Center, where Thomas was pronounced dead.[17] An autopsy found that Thomas died from "massive exsanguination due to aortic dissection."[18]

Plaintiffs in this action are the surviving spouse of Carlos Thomas—Shameka Grant Thomas—and his children—Devin White, Carnikqua Thomas, and Arniquia Harden o/b/o minor child Carden Harden (collectively "Plaintiffs"). Plaintiffs filed the instant suit on November 11, 2023, against Dr. Barnum and several other defendants.[19]

Against Dr. Barnum, Plaintiffs are alleging medical malpractice; failure to adequately train and supervise nurses; failure to develop and/or institute proper policies and procedures necessary to see that inmates and detainees be provided with appropriate medical care and treatment when experiencing a hypertensive crisis; failure to establish appropriate standing orders for inmates exhibiting signs of

---

[13] *Id.* at ¶ 28.
[14] *Id.* at ¶ 29.
[15] *Id.* at ¶ 30.
[16] *Id.* at ¶ 31.
[17] *Id.* at ¶ 32.
[18] *Id.* at ¶ 33.
[19] R. Doc. 1.

hypertensive crisis; and other allegations regarding supervision, training, and policy setting relating to care and treatment of inmates, such as Carlos Thomas.[20]

Defendant Barnum filed the instant Motion to Dismiss on January 31, 2024.[21] Dr. Barnum argues that Plaintiffs' claims against him should be dismissed because this Court lacks subject matter jurisdiction as Plaintiffs failed to exhaust their administrative remedies as required by statute.[22] Additionally, Dr. Barnum asserts that Plaintiffs' claims should also be dismissed for failure to state a claim upon which relief can be granted.[23]

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.[24] The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.[25] The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."[26] When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.[27] Additionally, regardless of how well-pleaded the factual

---

[20] *Id.*
[21] R. Doc. 19.
[22] *Id.*
[23] *Id.*
[24] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).
[25] *Id.*
[26] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[27] *Id.* at 679.

allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.[28]

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto.[29] "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[30] Indeed, any documents attached to the briefing on a motion to dismiss may be considered by the Court if the documents are sufficiently referenced in the complaint and no party questions their authenticity.[31]

### III. LAW & ANALYSIS

In his Motion, Dr. Barnum insists that all claims against him are medical malpractice claims and, as such, must first be presented to a medical review panel pursuant to Louisiana law.[32] However, Plaintiffs allege that Dr. Barnum's actions violated Thomas' constitutional protections pursuant to 42 U.S.C. § 1983.[33] "Valid Section 1983 claims are premised upon the violation of constitutional civil rights involving intentional wrongdoing on the part of a state official; therefore, the requirement for a medical review panel usually does not apply to Section 1983

---

[28] *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).
[29] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).
[30] *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.,* 322 F.3d 371, 374 (5th Cir. 2003).
[31] *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008).
[32] R. Doc. 19-1 at 2 ("All claims related to Dr. Barnum sound in medical malpractice and must first be presented to a medical review panel, pursuant to La. R.S. 40:1231.8 and established jurisprudence").
[33] R. Doc. 1 at 9.

claims."[34] The Plaintiffs also allege negligence against Dr. Barnum in Count V of their complaint.[35]

### A. § 1983 Claims

#### i. Against Dr. Barnum in His Official Capacity

To the extent Plaintiffs attempt to recover monetary damages from Dr. Barnum in his official capacity, the claim must be dismissed. A suit for damages cannot be maintained against an official in their official capacity because such a suit is really a suit against the state itself.[36] "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."[37] Thus, where Plaintiffs attempt to assert a § 1983 claim for monetary damages against Dr. Barnum as an employee of the state in his official capacity, the claim must be dismissed.

#### ii. Against Dr. Barnum in His Individual Capacity

Plaintiffs also assert § 1983 claims against Dr. Barnum in his individual capacity alleging that his actions violated Thomas' constitutional rights. Under § 1983, a defendant is liable only for their own unconstitutional actions, not those of subordinates.[38] Supervisory liability requires a showing of deliberate indifference, which occurs when a supervisor either (a) directly participates in the alleged

---

[34] *Saucier v. Uchendu*, 2021 WL 2354600 (W.D. La. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 2345481 (W.D. La. June 8, 2021).
[35] R. Doc. 1.
[36] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).
[37] *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945).
[38] *Davis v. Pacheco*, No. CIV.A 09-1436, 2010 WL 318268 (W.D. La. Jan. 25, 2010) (citing *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994)).

constitutional violation, or (b) implements or enforces a policy or practice that is the moving force behind the violation.[39]

"Deliberate indifference is an extremely high standard to meet."[40] "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[41] "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference.[42] Even "gross negligence" does not establish deliberate indifference.[43] A prisoner does not state a successful claim based on allegations that defendants acted negligently or committed medical malpractice.[44] Likewise, a prisoner who merely disagrees with the treatment he received or believes that he should have received additional treatment does not raise a viable deliberate indifference claim.[45] A supervisor's deliberate indifference generally requires a plaintiff to allege at least a pattern of similar violations.[46]

In this case, Plaintiffs fail to allege facts demonstrating they could make a plausible claim that Dr. Barnum acted with deliberate indifference. When his office was contacted on November 10, 2022, around 10:00 a.m., nurse Charlene Huffman ("Nurse Huffman") took the call and told Dr. Barnum that Thomas had back pain.[47]

---

[39] *See* Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 420 (5th Cir. 2017).
[40] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir.2001).
[41] *Id.* (internal quotation marks and citation omitted).
[42] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)
[43] *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir.2004).
[44] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).
[45] *Id.*
[46] *See Rios v. City of Del Rio Texas*, 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).
[47] R. Doc. 19-5 at 1.

Dr. Barnum then ordered a steroid injection and a muscle relaxer.[48] Dr. Barnum then made an appointment to physically assess Thomas around lunch time that same day.[49] Before the physical assessment between Thomas and Dr. Barnum ever took place, Thomas was taken to the emergency room.[50] Dr. Barnum highlights that his "care and treatment of Mr. Thomas was limited to the information he received from Nurse Huffman that she received from Nurse Clark and his telephone order of an IM steroid injection and a muscle relaxer."[51] Dr. Barnum never physically treated or examined Mr. Thomas.[52]

Plaintiffs acknowledge that Dr. Barnum responded to Thomas' reported symptoms by prescribing medication and scheduling an appointment to evaluate him in person.[53] Although the outcome was tragic, these actions do not suggest that Dr. Barnum ignored Thomas' needs, intentionally treated him incorrectly, or refused necessary treatment.

Further, Plaintiffs do not demonstrate that Dr. Barnum's policies were the moving force behind the alleged constitutional violation. Plaintiffs do not allege any prior incidents indicating a pattern of deliberate indifference by Dr. Barnum. Plaintiffs' claims rely solely on Thomas' isolated experience, which is insufficient to establish supervisory liability.

---

[48] R. Doc. 19-5.
[49] *Id.*
[50] *Id*
[51] R. Doc. 19-1 at 8.
[52] *Id.*
[53] R. Doc. 1 at ¶ 30.

Without allegations showing that Dr. Barnum's conduct rose to the level of deliberate indifference or that a policy he implemented was the moving force behind a violation of Thomas' constitutional rights, Plaintiffs' § 1983 claims against him in his individual capacity must also be dismissed.

**B. State Law Medical Malpractice Claim Against Dr. Barnum**

Under Louisiana law, medical malpractice claims against qualified healthcare providers must first be submitted to a medical review panel before a court can exercise jurisdiction over them. Specifically, the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, et seq., establishes this requirement to ensure that such claims are evaluated by a panel of medical experts prior to litigation. Failure to comply with this mandatory process deprives the Court of subject matter jurisdiction over the claims.

In this case, Plaintiffs allege negligence against Dr. Barnum, asserting that he failed to adequately supervise and train nursing staff, implement proper policies, and provide appropriate medical care to Thomas.[54] These allegations, although framed as general negligence, are fundamentally rooted in claims of medical malpractice. The LMMA defines malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient...."[55]

---

[54] R. Doc. 1 at 16–18.
[55] La. Rev. Stat. Ann. § 40:1231.1(13).

Dr. Barnum contends that he is a qualified healthcare provider under the LMMA, and Plaintiffs do not dispute this assertion.[56] Additionally, Plaintiffs' claims of Dr. Barnum's wrongdoing under Count V of their complaint meet LMMA's definition of "malpractice." Accordingly, any claims of negligence or medical malpractice against Dr. Barnum must first be presented to a medical review panel.[57] Plaintiffs have not alleged, nor provided any evidence, that they have satisfied this prerequisite.

Thus, the Court finds that Plaintiffs' negligence claims against Dr. Barnum must be dismissed without prejudice to their right to refile upon compliance with the LMMA's requirements.

## IV.   CONCLUSION

For the foregoing reasons, Dr. Barnum's Motion to Dismiss (R. Doc. 19) is **GRANTED**. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' claims against Dr. Barnum pursuant to 42 U.S.C. § 1983 are dismissed **with prejudice**. Plaintiffs' state law malpractice claims against Dr. Barnum are dismissed **without prejudice**.

**THUS DONE AND SIGNED** in Chambers this 27th of March, 2025.

*/s/ Jerry Edwards, Jr.*
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[56] R. Doc. 19-1 at 2.
[57] *See John v. Woods*, No. 15-1701, 2016 WL 7852369, at *3 (W.D. La. Nov. 22, 2016) (citations omitted) ("Plaintiffs must submit malpractice claims to a medical review panel prior to filing suit. This requirement applies to malpractice claims brought within § 1983 actions.").