### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **SHAMEKA GRANT THOMAS ET AL** | **CIVIL ACTION NO. 23-1614** |
| **VERSUS** | **JUDGE EDWARDS** |
| **STUART WRIGHT ET AL** | **MAG. JUDGE PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss (R. Doc. 21) filed by defendants Natchitoches Parish Sheriff Stuart Wright ("Sheriff Wright"), Kathy Childress, Lisa George, Willie Clark, Michael Oliver, Christopher Orsborn, and Tawana Bernstine, in their official capacities, and the Natchitoches Parish Law Enforcement District ("NPLED") (collectively "Defendants"). Plaintiffs oppose the motion (R. Doc. 34), and Defendants replied (R. Doc. 40). Considering the pleadings, the law, and the arguments of the parties, and for the reasons below, the motion is **GRANTED.**

### I.    BACKGROUND

Carlos Thomas ("Thomas" or "Decedent") became an inmate at the Natchitoches Parish Detention Center ("NPDC") on October 14, 2022.[1] Kathy Childress ("Nurse Childress" or "Childress") conducted an intake screening of Thomas and recorded his blood pressure of 151/106.[2] Thomas did not report any medical problems during intake.[3]

---

[1] R. Doc. 1 at ¶ 14.
[2] *Id.*
[3] *Id.* at ¶ 17.

On November 9, 2022, Thomas reported chest and back pain.[4] Lieutenant Michael Oliver ("Lieutenant Oliver" or "Oliver") and Deputy Tawana Bernstine ("Deputy Bernstine" or "Bernstine"), who are employed by Sheriff Wright at the Natchitoches Parish Law Enforcement District ("NPLED"), were called to the L-dorm of the NPDC to assist Thomas.[5] NPLED is responsible for the operation of NPDC.[6] Oliver and Bernstine reported Thomas' complaint to nurse Lisa George ("Nurse George" or "George") who gave Thomas an ibuprofen.[7] That night, other inmates in Thomas' dorm attempted to soothe his pain by applying pressure to and massaging Thomas' back.[8] Sometime during that night, Thomas also reported his chest pain to Christopher Orsborn ("Deputy Orsborn" or "Orsborn"), another deputy with NPLED.[9]

On November 10, 2022, Nurse George gave Thomas a Tylenol and told him to rest.[10] Nurse George had Thomas place a "sick call" to explain what was ailing him since he was scheduled to see a doctor that day.[11] In the call, Thomas reported he had "bad spasms, really, really bad!"[12] Later that morning, around 10:00 a.m., Plaintiff Shameka Thomas, having been advised of Thomas' condition, called NPDC and spoke to nurse Willie Clark ("Nurse Clark" or "Clark").[13] Nurse Clark then assessed Thomas, palpating his back and ribcage and finding it tender to the touch.[14] Nurse

---

[4] *Id.* at ¶ 19.
[5] *Id.*
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶¶ 20–21.
[8] *Id.* at ¶ 23.
[9] *Id.* at ¶ 24.
[10] *Id.* at ¶ 25.
[11] *Id.* at ¶ 26.
[12] *Id.* at ¶ 27.
[13] *Id.* at ¶ 28.
[14] *Id.* at ¶ 29.

Clark called Dr. Otis Barnum's office, and Dr. Barnum ("Barnum" or "Dr. Barnum") ordered the administration of steroids and set an appointment to see Thomas after lunch.[15] Later that morning, Thomas was found unresponsive.[16] EMS was called by jail staff, and Thomas was transported to Natchitoches Regional Medical Center, where Thomas was pronounced dead.[17] An autopsy found that Thomas died from "massive exsanguination due to aortic dissection."[18]

Plaintiffs in this action are the surviving spouse of Carlos Thomas—Shameka Grant Thomas—and his children—Devin White, Carnikqua Thomas, and Arniquia Harden o/b/o minor child Carden Harden (collectively "Plaintiffs").[19] Plaintiffs filed suit on November 11, 2023.[20] Plaintiffs named NPLED, Sheriff Wright, Dr. Barnum, Oliver, Orsborn, Bernstine, Childress, George, and Clark as defendants.[21] Sheriff Wright, Childress, George, Clark, Bernstein, Oliver, and Orsborn filed an answer in which they asserted qualified immunity.[22] Those defendants then filed a motion asking this Court to require Plaintiffs to file a reply addressing qualified immunity under Rule 7(a),[23] and the Court granted that motion.[24] Defendants filed the instant Motion to Dismiss on February 1, 2024.[25]

---

[15] *Id.* at ¶¶ 29–30.
[16] *Id.* at ¶ 31.
[17] *Id.* at ¶ 32.
[18] *Id.* at ¶ 33.
[19] R. Doc. 1.
[20] *Id.*
[21] *Id.*
[22] R. Doc. 23.
[23] R. Doc. 24.
[24] R. Doc. 26.
[25] R. Doc. 21.

## II.    LEGAL STANDARD

### a.  Pleading Standards and Rule 12(b)(6) Standard.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.[26] The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.[27] The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."[28] When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.[29] Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.[30]

### b.  Section 1983/*Monell* Claims Against Local Governments.

Title 42 U.S.C. § 1983 provides a cause of action against individuals who, acting under color of state law, violate another's constitutional rights.[31] In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court determined that Congress intended Section 1983 to apply to local government entities in addition to individuals.[32] However, the Court also held that

---

[26] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).
[27] *Id.*
[28] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[29] *Id.* at 679.
[30] *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).
[31] 42 U.S.C. § 1983.
[32] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).

municipalities and local government agencies cannot be held liable under Section 1983 based on the doctrine of *respondeat superior*.[33] Instead, liability arises only when the violation results from "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."[34]

To establish a *Monell* claim against a local government entity, a plaintiff must demonstrate: (1) the existence of an official policy or custom; (2) that a policymaker had actual or constructive knowledge of the policy or custom; and (3) that the policy or custom was the "moving force" behind a constitutional violation.[35] Identifying an official policy or custom ensures that a local government entity is held accountable only when constitutional violations stem from the actions of officials whose decisions can be attributed to the government itself.[36]

## III.    LAW & ANALYSIS

In their Motion, Defendants make four central arguments: (1) all official capacity claims against Childress, George, Clark, Orsborn, Bernstine, and Oliver should be dismissed as duplicative of those against Sheriff Wright; (2) the *Monell* claims against Sheriff Wright and the federal claims against NPLED should be dismissed as conclusory and lacking allegations of prior incidents putting them on notice of unconstitutional medical care practices at NPDC; (3) the state law wrongful death claims against Sheriff Wright and NPLED are barred by immunity under La.

---

[33] *Id.*
[34] *Id.*
[35] See *Fuentes v. Nueces Cnty., Tex.*, 689 F. App'x 775, 777 (5th Cir. 2017) (quoting *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010).
[36] See *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997).

R.S. 9:2798.1; and (4) all punitive damages claims against these Defendants in their official capacities and against NPLED are legally unrecoverable.[37] The Court will take each in turn.

> **(1) Official capacity claims against Childress, George, Clark, Orsborn, Bernstine, and Oliver.**

In their Motion, Defendants claim that all official capacity claims against Childress, George, Clark, Orsborn, Bernstine, and Oliver should be dismissed as duplicative of the official capacity claims asserted against NPLED and Sheriff Wright.[38] Plaintiffs oppose the Motion in part, contending that the official capacity claim against Nurse Clark should remain because Nurse Clark was in charge of implementing the policies and procedures relating to inmates' healthcare.[39] Plaintiffs also claim that the official capacity claims against Nurse Clark for failure to train and supervise should remain.[40] Plaintiffs argue that Clark failed to train the nurses and detention officers on handling a crisis like the one Thomas experienced.[41] In their reply, Defendants assert that Plaintiffs' allegations are conclusory and fail to establish a pattern of prior incidents necessary to support *Monell* liability.[42] Because Plaintiffs do not address the dismissal of the official capacity claims against Childress, George, Orsborn, Bernstine, and Oliver the Court will analyze the claims against them separately from the claims against Clark.

> **a. Official Capacity Claims Against Childress, George, Orsborn, Bernstine, and Oliver.**

---

[37] R. Doc. 21.
[38] R. Doc. 21-1 at 8.
[39] R. Doc. 34 at 16.
[40] R. Doc. 34 at 16–18.
[41] R. Doc. 34 at 17.
[42] R. Doc. 40 at 6–7.

Claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent."[43] An entity may not be held liable under Section 1983 on a theory of vicarious liability for the actions of its employees.[44] When the governmental entity itself is a defendant, claims against employees of the entity in their official capacity are redundant, and therefore should be dismissed.[45]

Plaintiffs have made claims against Defendants Childress, George, Orsborn, Bernstine, and Oliver in both their individual and official capacities.[46] Because these defendants are employees of NPLED and because Plaintiffs have also asserted official capacity claims against Sheriff Wright and federal constitutional claims against NPLED, the official capacity claims against these individual defendants are redundant. Accordingly, Defendants' Motion to Dismiss official capacity claims against Childress, George, Orsborn, Bernstine, and Oliver is **GRANTED**.

### b. Official Capacity Claim Against Nurse Clark.

Plaintiffs assert an official capacity claim against Nurse Clark under *Monell*, arguing liability on two grounds: (1) her role in overseeing day-to-day and departmental compliance with standing medical orders, making her responsible for the deficient policies, procedures, and customs that allegedly led to Thomas's death; and (2) a failure to train and supervise claim.[47]

---

[43] *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).
[44] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017).
[45] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).
[46] R. Doc 1 at 4–5.
[47] R. Doc. 34 at 15–16.

Plaintiffs contend that Clark was responsible for policies or customs that contributed to Thomas's death.[48] However, they do not provide specific allegations identifying unconstitutional policies, established customs, or prior incidents demonstrating a pattern of constitutional violations under *Monell*.

Plaintiffs further argue that their official capacity claim against Clark should survive because they have adequately pleaded a failure-to-train-and-supervise claim.[49] The Supreme Court has recognized "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [Section] 1983."[50] To establish a failure to train or supervise claim, a plaintiff must show "1) the [defendants] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[51] The deliberate indifference requirement of the third element is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[52] Generally, to show deliberate indifference a plaintiff will need to demonstrate that municipal employees "violate constitutional rights 'so often' that the factfinder can infer from the pattern of violations that 'the

---

[48] *Id.*
[49] R. Doc. 34 at 16–18.
[50] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[51] *Pena v. City of Rio Grande City, Texas*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).
[52] *Connick*, 563 U.S. at 61, 131 S. Ct. at 1360, quoting *Bd. of Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 410 (1997).

need for further training must have been plainly obvious to the ... policymakers.'"[53] However, "even absent proof of a pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy."[54]

Plaintiffs do not allege a pattern of violations. Instead, Plaintiffs cite *O'Quin v. Gautreaux*, 2015 WL 1478194 (M.D. La. Mar. 31, 2015), arguing that their allegations, though general, warrant discovery to discern patterns of constitutional violations.[55] Defendants counter that *O'Quin* is an outlier case and inconsistent with the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Monell* arguing that Plaintiffs fail to allege prior similar incidents that would have put NPLED on notice of a need for policy changes.[56]

The Court focuses on the absence of allegations from Plaintiffs of specific prior incidents where Clark's failure to train led to similar constitutional violations. While *O'Quin* permitted discovery based on general allegations, its reasoning is not binding and appears inconsistent with Fifth Circuit precedent. The Fifth Circuit has held that "to get past the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'"[57] Looking at the Complaint, there are only general assertions

---

[53] *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018), quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989).

[54] *Id.*, citing *Bd. of Comm'rs of Bryan Cnty.*, 520 U.S. at 409.

[55] R. Doc. 34 at 17–18.

[56] R. Doc. 40 at 6–7.

[57] *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).

that the nurses at NPDC, like Clark, "fail[ed] to secure prompt, adequate and reasonable medical care to [Thomas]."[58] There are no specific facts in the Complaint describing a policy or custom, so Plaintiffs fail to plausibly allege a pattern to demonstrate deliberate indifference. Further, Plaintiffs do not argue that Clark's training or supervision of the other relevant defendants was so inadequate that it presented an obvious and highly predictable risk. Absent well-pleaded allegations showing a pattern of similar constitutional violations or that the training inadequacy was so obvious that it presented an obvious and highly predictable risk, Plaintiffs fail to meet the deliberate indifference standard required under *Monell*.

Accordingly, Defendants' Motion to Dismiss the official capacity claim against Clark is **GRANTED**.

### (2) *Monell* claims against Sheriff Wright and the federal claims against NPLED.

Next, Defendants argue that all official capacity and *Monell* claims, as well as all federal claims against NPLED, should be dismissed.[59] Defendants contend that under *Monell*, municipal liability requires proving both a constitutional violation and that an official policy or custom was the "moving force" behind the violation.[60] They assert that Plaintiffs have failed to meet this standard.

First, Defendants emphasize that there is no vicarious liability under Section 1983, meaning Sheriff Wright and NPLED cannot be held responsible solely for the actions of employees.[61] They argue that Plaintiffs have not identified an

---

[58] R. Doc. 1 at 8.
[59] R. Doc. 21-1 at 8–26.
[60] *Id.* at 10.
[61] *Id.* at 9.

unconstitutional policy, practice, or failure to train that meets the stringent standard of "deliberate indifference."[62] Further, they claim that Sheriff Wright took appropriate steps to provide medical care, such as hiring a licensed physician (Dr. Barnum) and multiple nurses to treat inmates who provided medical services to Thomas.[63] They argue that these actions show a lack of deliberate indifference and directly undermine Plaintiffs' claims.[64] Ultimately, Defendants argue that Plaintiffs' allegations about unconstitutional customs, policies, or procedures are conclusory rather than factual and fail to establish a pattern of similar incidents that would put Sheriff Wright on notice of a systemic problem.[65] In their response, Plaintiffs argue NPLED is liable under *Monell* for two reasons: (1) the policies, patterns, or practices that it established, condoned or ratified;[66] (2) its failure to train or supervise its employees—the Court will analyze each argument in turn.[67]

### 1. De Facto Policies and Practices

Plaintiffs allege that NPLED maintained and implemented unconstitutional practices.[68] Additionally, Plaintiffs request that their claims survive dismissal to conduct discovery so that they may show if such practices are widespread.[69]

Generally, to succeed on a *Monell* claim, a plaintiff must establish 1) an official policy or custom, of which 2) a policymaker can be charged with actual or constructive

---

[62] *Id.* at 10–11.
[63] *Id.* at 12–14.
[64] *Id.*
[65] *Id.*
[66] R. Doc. 34 at 11–16.
[67] *Id.* at 16–18.
[68] *Id.* at 11–16.
[69] *Id.* at 17.

knowledge, and 3) a constitutional violation whose "moving force" is that policy or custom.[70] Municipal liability under Section 1983 arises only if a deprivation of constitutional rights occurred pursuant to an official policy or custom.[71] While official policy is typically found in formal policy statements, ordinances, or regulations, it can also be evidenced by a persistent, widespread practice (i.e., a "de facto" policy):

> (2) .... a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy ... Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined.[72]

Plaintiffs' allegations of a de facto policy, practice, or custom fail the "moving force" requirement under *Monell*. Even if discovery were to be conducted in an effort to meet the first prong under *Monell*, the Plaintiffs factual allegations, taken as true, do not show that the municipal action was the "moving force" of any violation. To succeed on this third prong "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[73] "[T]he plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow

---

[70] *McGregory v. City of Jackson*, 335 F.App'x 446, 448 (5th Cir. 2009), citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–49 (5th Cir. 2003).
[71] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)
[72] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984).
[73] *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

the decision."[74] Deliberate indifference is a high standard, and "a showing of simple or even heightened negligence will not suffice."[75]

Even accepting all facts in the complaint as true, there are no factual allegations demonstrating that Defendants engaged in conduct that violated Thomas' constitutional rights. The record indicates that Sheriff Wright hired medical staff, including a licensed physician and multiple nurses, to provide care to inmates. That medical staff gave Thomas a medical screening, assessed and treated him when he complained of pain, and quickly scheduled him an appointment with a doctor. These facts undermine any claim of deliberate indifference, as they demonstrate an affirmative effort to provide medical treatment rather than a disregard for inmate health. Given the heightened standard to demonstrate deliberate indifference, Plaintiffs' allegations that NPLED "condoned" certain practices are vague, conclusory, and insufficient to establish *Monell* liability. Because Plaintiffs fail to sufficiently allege facts to demonstrate deliberate indifference, the Court declines to delve into an analysis of the other two prongs of *Monell*—an official policy and actual or constructive knowledge thereof.  Accordingly, Defendants' Motion to Dismiss these claims is **GRANTED**.

### 2.  Failure to Train

Plaintiffs also assert a failure-to-train theory, alleging that NPLED failed to adequately train its employees.[76] However, to prevail on this claim, Plaintiffs must

---

[74] *Id.* at 411.
[75] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).
[76] R. Doc. 34 at 16.

show that NPLED's failure to train amounted to "deliberate indifference" to the constitutional rights of those affected.[77] Deliberate indifference requires proof of a pattern of similar constitutional violations or, in rare cases, a single incident if the need for training was "so obvious" that failure to provide it would likely result in constitutional harm.[78]

Plaintiffs do not identify any prior instances of inadequate training leading to constitutional violations, nor do they provide specific allegations regarding how NPLED's training was deficient. They do not assert what training (or lack thereof) caused harm or how any alleged inadequacy was the moving force behind a constitutional violation. A general claim that NPLED "failed to train" its employees is insufficient under *Monell*. Without allegations of a pattern of violations or an obvious need for training, Plaintiffs have not met the high bar for establishing liability on this basis.

Because Plaintiffs have failed to sufficiently plead an underlying constitutional violation, an official policy or widespread practice, or a failure to train that rises to the level of deliberate indifference, their *Monell* claims against Sheriff Wright and NPLED cannot proceed. Accordingly, Defendants' Motion to Dismiss these claims is **GRANTED**.

### (3) State law claims against Sheriff Wright and NPLED.

Defendants argue that Plaintiffs' wrongful death claims under Louisiana law against Sheriff Wright and NPLED should be dismissed because they are immune

---

[77] See *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).
[78] See *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

under La. R.S. 9:2798.1.[79] This statute grants public entities and their employees immunity for policymaking and discretionary acts performed within the scope of their lawful duties.[80] Defendants argue in their Motion that "Sheriffs have broad discretion in hiring, training, and supervising their deputies and other employees under Louisiana law. The hiring, training, and supervision decisions of a sheriff are policymaking or discretionary acts."[81] To support that assertion, Defendants cite to *Hoffpauir v. Columbia Cas. Co.*, 2013 WL 5934699 at *12-13 (M.D. La. 2013) for its holding that "the hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."[82] Plaintiffs can only overcome immunity if they show that Defendants' actions were either: (1) Not reasonably related to a legitimate governmental objective, or (2) criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.[83] Defendants argue that Plaintiffs fail to meet either exception, and Plaintiffs' complaint does not cite any laws or regulations that Sheriff Wright or NPLED violated, nor does it allege facts showing gross negligence or intentional misconduct.[84] Defendants further assert that they took steps to provide medical care at NPDC, including hiring trained professionals and maintaining physician-approved policies.[85] Therefore, they conclude, Plaintiffs' state law claims should be dismissed.

---

[79] R. Doc. 21-1 at 26.
[80] La. R.S. 9:2798.1.
[81] R. Doc. 21-1 at 27.
[82] R. Doc. 21-1 at 27.
[83] La. R.S. 9:2798.1.
[84] R. Doc. 21-1 at 28.
[85] *Id.*

In response, Plaintiffs argue that they have alleged sufficient facts to support their state law claims against Sheriff Wright and NPLED, and that Defendants' reliance on discretionary function immunity under La. R.S. § 9:2798.1 is premature.[86] They contend that at the motion to dismiss stage, courts do not grant discretionary function immunity.[87] Since Defendants cannot invoke this immunity at this stage, Plaintiffs argue that there is no valid basis for dismissing their state law claims at this point in the proceedings.[88] In their reply, Defendants reiterate their initial arguments.[89]

The core dispute here is whether La. R.S. 9:2798.1 discretionary function immunity can be resolved at the motion to dismiss stage. The Fifth Circuit has held that dismissal under Rule 12(b)(6) is appropriate based on an affirmative defense only if the defense appears on the face of the complaint.[90] Therefore, a court can dismiss claims if there are sufficient facts on the face of a complaint to demonstrate entitlement to an affirmative defense. Here, Sheriff Wright asserts statutory immunity under La. R.S. 9:2798.1, which provides that public officers are immune from liability for policymaking or discretionary acts performed within the course and scope of their duties.[91] However, the statute excludes acts that are not reasonably

---

[86] R. Doc. 34 at 18–19.
[87] *Id.*
[88] *Id.*
[89] R. Doc. 40 at 7.
[90] *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, NA, 467 F.3d 466, 470 (5th Cir. 2006); also see *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).
[91] La. R.S. § 9:2798.1(B)

related to a legitimate governmental objective or that constitute criminal, fraudulent, malicious, intentional, willful, reckless, or flagrant misconduct.[92]

Sheriff Wright avers that his immunity arguments under the statute are "all based on the facts alleged in Plaintiff's Complaint and FRCP 7(a) Reply."[93] It is undisputed that Sheriff Wright is an officer of a public entity, so the remaining question is whether the Complaint, on its face, establishes that his actions were discretionary policymaking functions within the scope of his duties. There are two actions for which Plaintiffs are attempting to assert Wright's liability over: (1) his hiring, training, and supervision of the Nursing and Detention Defendants and (2) the implementation of medical policies and procedures at NPDC.[94] Each of those claims involves a failure to hire, train, supervise, or implement medical policies— functions that Louisiana law recognizes as discretionary.[95] Because Plaintiffs' Complaint, on its face, alleges actions that constitute discretionary policymaking within the scope of Sheriff Wright's duties, La. R.S. 9:2798.1 immunity applies. Furthermore, Plaintiffs allege no facts in their Complaint (nor do they make an argument in their Opposition) to show Sheriff Wright's actions were not related to a legitimate governmental objective or that they constituted criminal, fraudulent, malicious, intentional, willful, reckless, or flagrant misconduct. Accordingly, this request of the Motion is **GRANTED**.

---

[92] La. R.S. § 9:2798.1(C).
[93] R. Doc. 41 at 7.
[94] R. Doc. 1 at 17–18.
[95] *See Smith v. Lafayette Par. Sheriff's Dept.*, 874 So. 2d 863, 867–868 (La. Ct. App. 3d Cir. 2004); *Hoffpauir v. Columbia Cas. Co.*, 2013 WL 5934699 at *12–13 (M.D. La. 2013); also see *Rombach v. Culpepper*, 2021 WL 2944809 at *9–10 (5th Cir. 2021).

**(4) Claims for punitive damages against all defendants in their official capacities and against NPLED.**

Finally, Defendants argue that all claims for punitive damages against them in their official capacities and against NPLED must be dismissed.[96] They contend that a suit against a local government official in their official capacity is, in effect, a suit against the local government entity itself. Citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), Defendants assert that punitive damages are not recoverable against local government entities under Section 1983.[97] Because Plaintiffs do not specify which defendants they seek punitive damages from, and because such damages are legally barred against municipalities and officials in their official capacities, Defendants assert that these claims should be dismissed as a matter of law.[98] Plaintiffs did not address those arguments from Defendants in their opposition.[99] Defendants highlight that lack of response in their reply.[100]

Punitive damages are not recoverable against municipalities or local government entities under Section 1983.[101] Further, "'an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.' As such, a plaintiff is barred from recovering punitive damages against an official acting in his official capacity."[102] The Plaintiffs do not have a valid claim for punitive damages

---

[96] R. Doc. 21-1 at 28–29.
[97] *Id.* at 29.
[98] *Id.*
[99] R. Doc. 34.
[100] R. Doc. 40 at 7.
[101] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).
[102] *Givs v. City of Eunice,* 2006 WL 1831528, at *1 (W.D. La. June 29, 2006) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

against the municipal defendant and the other defendants in their official capacities as a matter of law. Accordingly, this request of the Motion is **GRANTED**, and these claims are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (R. Doc. 21) is **GRANTED**. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' claims against Sheriff Stuart Wright, Kathy Childress, Lisa George, Willie Clark, Michael Oliver, Christopher Orsborn and Tawana Bernstine, in their official capacities, and the Natchitoches Parish Law Enforcement District ("NPLED") pursuant to 42 U.S.C. § 1983 along with Plaintiffs' state law claims against Sheriff Wright and NPLED are dismissed **with prejudice**.

**THUS DONE AND SIGNED** in Alexandria, Louisiana, this 27th day of March, 2025.

_Jerry Edwards, Jr._
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**