UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

SHAMEKA GRANT THOMAS ET AL    CIVIL ACTION NO. 23-1614

VERSUS    JUDGE EDWARDS

STUART WRIGHT ET AL    MAG. JUDGE PEREZ-MONTES

MEMORANDUM RULING

Before the Court is a Motion for Judgment on the Pleadings filed by defendants Michael Oliver, Tawana Bernstine, and Christopher Orsborn (collectively, "Defendants").[1] Plaintiffs filed an opposition to the Motion.[2]

I.    BACKGROUND

Carlos Thomas ("Thomas" or "Decedent") became an inmate at the Natchitoches Parish Detention Center ("NPDC") on October 14, 2022.[3] Kathy Childress ("Nurse Childress" or "Childress") conducted an intake screening of Thomas and recorded his blood pressure of 151/106.[4] Thomas did not report any medical problems during intake.[5]

On November 9, 2022, Thomas reported chest and back pain.[6] Lieutenant Michael Oliver ("Lieutenant Oliver" or "Oliver") and Deputy Tawana Bernstine ("Deputy Bernstine" or "Bernstine"), who are employed by Sheriff Stuart Wright ("Sheriff Wright") at the Natchitoches Parish Law Enforcement District ("NPLED"),

[1] R. Doc. 42.
[2] R. Doc. 50.
[3] R. Doc. 1 at ¶ 14.
[4] *Id.*
[5] *Id.* at ¶ 17.
[6] *Id.* at ¶ 19.

were called to the L-dorm of the NPDC to assist Thomas.[7] NPLED is responsible for the operation of NPDC.[8] Oliver and Bernstine reported Thomas' complaint to nurse Lisa George ("Nurse George" or "George") who gave Thomas an ibuprofen.[9] That night, other inmates in Thomas' dorm attempted to soothe his pain by applying pressure to and massaging Thomas' back.[10] Sometime during that night, Thomas also reported his chest pain to Christopher Orsborn ("Deputy Orsborn" or "Orsborn"), another deputy with NPLED.[11]

On November 10, 2022, Nurse George gave Thomas a Tylenol and told him to rest.[12] Nurse George had Thomas place a "sick call" to explain what was ailing him since he was scheduled to see a doctor that day.[13] In the call, Thomas reported he had "bad spasms, really, really bad!"[14] Later that morning, around 10:00 a.m., Plaintiff Shameka Thomas, having been advised of Thomas' condition, called NPDC and spoke to nurse Willie Clark ("Nurse Clark" or "Clark").[15] Nurse Clark then assessed Thomas, palpating his back and ribcage and finding it tender to the touch.[16] Nurse Clark called Dr. Otis Barnum's office, and Dr. Barnum ("Barnum" or "Dr. Barnum") ordered the administration of steroids and set an appointment to see Thomas after lunch.[17] Later that morning, Thomas was found unresponsive.[18] EMS was called by

---

[7] *Id.*
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶¶ 20–21.
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶ 24.
[12] *Id.* at ¶ 25.
[13] *Id.* at ¶ 26.
[14] *Id.* at ¶ 27.
[15] *Id.* at ¶ 28.
[16] *Id.* at ¶ 29.
[17] *Id.* at ¶¶ 29–30.
[18] *Id.* at ¶ 31.

jail staff, and Thomas was transported to Natchitoches Regional Medical Center, where Thomas was pronounced dead.[19] An autopsy found that Thomas died from "massive exsanguination due to aortic dissection."[20]

Plaintiffs in this action are the surviving spouse of Carlos Thomas—Shameka Grant Thomas—and his children—Devin White, Carnikqua Thomas, and Arniquia Harden o/b/o minor child Carden Harden (collectively "Plaintiffs").[21] Plaintiffs named NPLED, Sheriff Wright, Dr. Barnum, Oliver, Orsborn, Bernstine, Childress, George, and Clark as defendants. Sheriff Wright, Childress, George, Clark, Bernstein, Oliver, and Orsborn filed an answer in which they asserted qualified immunity.[22] Those defendants then filed a motion asking this Court to require Plaintiffs to file a reply addressing qualified immunity under Rule 7(a),[23] and the Court granted that motion.[24] Defendants filed the instant Motion for Judgment on the Pleadings on June 30, 2024.[25]

The claims against Defendants are contained in Count I and Count IV of Plaintiffs' Complaint.[26] Count I of the Complaint asserts that under 42 U.S.C. § 1983 Defendants, in their individual capacities, violated Thomas' constitutional rights under the Eighth and Fourteenth Amendments by failing to provide prompt and adequate medical care, despite knowing that Thomas faced a substantial risk of harm

---

[19] *Id.* at ¶ 32.
[20] *Id.* at ¶ 33.
[21] *Id.*
[22] R. Doc. 23.
[23] R. Doc. 24.
[24] R. Doc. 26.
[25] R. Doc. 42.
[26] R. Doc. 1 at 8–9;14–19.

from a hypertensive crisis.[27] Count IV of the Complaint allege Defendants are also liable for the wrongful death of Thomas under state law for their alleged negligence, gross negligence, and reckless misconduct in failing to provide adequate medical care and supervision.[28] Plaintiffs also requested punitive damages be awarded.[29]

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[30] "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[31] According to the Fifth Circuit, the standard for deciding a Rule 12(c) motion for judgment on the pleadings "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[32] In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[33] Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings but "may consider documents outside the complaint when they are: (1) attached to the motion;

---

[27] *Id.* at 9
[28] *Id.* at 14–16.
[29] *Id.* at ¶ 68.
[30] Fed. R. Civ. P. 12(c).
[31] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted).
[32] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).
[33] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

(2) referenced in the complaint; and (3) central to the plaintiff's claims."[34] The Court can also "take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court."[35] The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed liberally."[36]

### III.    LAW & ANALYSIS

Defendants seek dismissal with prejudice of all claims against them in their individual capacities. Defendants assert that: (1) they are entitled to qualified immunity from the federal constitutional claims; (2) Plaintiffs are not entitled to punitive damages because Defendants did not act with the requisite mental state; and (3) they are entitled to immunity under La. R.S. 9:2798.1 from the state law claims.[37] The Court will address each argument in turn.

### a.  Qualified Immunity and Section 1983 Inadequate Medical Care Claims

Defendants contend that all individual claims against them should be dismissed because Plaintiffs fail to allege facts showing a violation of any constitutional right or a violation of "clearly established" law.[38]

As previously noted, Defendants asserted qualified immunity in their answer. Qualified immunity protects government officials from personal liability unless the plaintiff establishes that: (1) the defendant violated the plaintiff's constitutional

---

[34] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x. 336, 340 (5th Cir. 2011).
[35] *In re American Intern. Refinery*, 402 B.R. 728, 749 (Bankr. W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[36] *Great Plains*, 313 F.3d at 312 (citation and internal quotation marks omitted).
[37] R. Doc. 42 at 3.
[38] R. Doc. 42-1 at 12.

rights; and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.[39]

Plaintiffs allege that Defendants violated Thomas' constitutional right to be free from "deliberate indifference" to his medical needs.[40] Defendants argue that Plaintiffs fail to meet the first prong of the qualified immunity analysis because they have not demonstrated a constitutional violation.[41]

The Supreme Court has held that the Eighth Amendment prohibits "deliberate indifference" to a prisoner's medical needs, and the Fifth Circuit has extended this rule to pretrial detainees under the Fourteenth Amendment.[42] To establish such deliberate indifference, a plaintiff must show that the defendant: (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) subjectively "dr[e]w the inference" that the risk existed; and (3) disregarded the risk.[43]

Defendants argue that Plaintiffs fail to satisfy the second and third elements.[44] As to the second prong, the Supreme Court has emphasized that a "prison official cannot be found liable" unless he or she "knows of" an excessive risk to inmate health or safety.[45] A failure to act "unaccompanied by knowledge of a significant risk of harm" is insufficient to establish a constitutional violation.[46]

---

[39] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

[40] R. Doc. 1 at ¶ 37.

[41] R. Doc. 42-1 at 14.

[42] *Farmer v. Brennan*, 511 U.S. 825, 833–47 (1994)); *Hare v. City of Corinth*, 74 F.3d 633, 648–49 (5th Cir. 1996) (en banc).

[43] *Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); also see *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006).

[44] R. Doc. 42-1 at 13.

[45] *Farmer*, 511 U.S. at 837.

[46] *Id.* at 837–38.

Plaintiffs' Opposition asserts that Defendants were subjectively aware of the substantial risk of serious harm to Thomas.[47] The sole support identified for that assertion in the Opposition is that "despite observing [Thomas'] severe pain throughout the night, [Oliver, Orsborn, and Bernstine] failed to secure the necessary medical attention and failed to follow the 'medical' protocols established by [the Natchitoches Parish Sheriff's Office]."[48] The Opposition does not identify the protocol to which they are referring.

The record lacks any allegations suggesting that Oliver, Orsborn, or Bernstine subjectively "drew the inference" that Thomas was experiencing a life-threatening medical emergency. On November 9, 2022, at approximately 7:00 p.m., Bernstine and Oliver were informed of Thomas' complaints of pain.[49] Fewer than five minutes after receiving this complaint from Thomas, Oliver notified Nurse George who administered medication and returned Thomas to his dormitory.[50] Later that night and into the early morning hours of November 10, 2022, Oliver, Bernstine, and Orsborn observed Thomas in pain.[51] When Nurse George returned for her shift at 4:59 a.m., Defendants described Thomas' condition to her.[52] Plaintiffs do not allege that Defendants were medical professionals or that they had any specialized medical training that would have allowed them to identify a hypertensive crisis. The facts, taken as true, show that Defendants promptly reported Thomas' complaints to a

---

[47] R. Doc. 50 at 4.
[48] *Id.*
[49] R. Doc. 29 at 6.
[50] *Id.* at 6–7.
[51] *Id.* at 7.
[52] *Id.* at 8.

medical professional, who treated Thomas and returned him to his dormitory. The timing and sequence of events undermine Plaintiffs' assertion that Defendants possessed the requisite subjective knowledge. Defendants reported Thomas' complaints promptly, relied on the judgment of a medical professional, and later provided updated observations to Nurse George when Thomas' condition did not improve. Plaintiffs do not identify any facts indicating that Defendants knew or should have known that the medical care provided was insufficient or that Thomas' condition was life-threatening. The absence of allegations showing that Defendants had actual awareness of a critical medical emergency is fatal to Plaintiffs' claim under the second prong.

Turning to the third prong, even if Defendants had such subjective knowledge, the facts do not demonstrate that they disregarded the risk. The facts alleged reflect that they responded reasonably by notifying a medical professional and following her guidance. Defendants acted within minutes of Thomas' initial complaint by contacting Nurse George, who evaluated Thomas, provided medication, and determined that he could return to his dormitory. When Thomas continued to experience pain, Defendants again reported his condition to Nurse George at the earliest opportunity during her next shift. Plaintiffs' allegations do not suggest that Defendants ignored Thomas' condition or failed to take reasonable measures to secure medical attention. Instead, the facts demonstrate that Defendants repeatedly deferred to the medical judgment of Nurse George—a reasonable course of action for detention officers without specialized medical training.

Given the lack of evidence that Defendants were subjectively aware of a substantial risk of serious harm—and the lack of evidence that they disregarded such a risk—Plaintiffs fail to establish a constitutional violation at the first step of the qualified immunity analysis. As Plaintiffs have not satisfied the first prong required to defeat qualified immunity, the Court need not address the second prong, and Defendants are entitled to qualified immunity.

Accordingly, the request in the Motion to dismiss the federal constitutional claims against Defendants in their personal capacities is **GRANTED**.

### b. Punitive Damages Claims

In their Motion, Defendants argue that Plaintiffs cannot recover punitive damages against them because their allegations fail to show conduct that meets the standard for such an award.[53] Punitive damages may be awarded only when the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights."[54]

Defendants assert that the facts show all Defendants took steps to report Thomas' medical complaints to Nurse George, and there are no facts to support they were "motivated by evil intent" or acted with "reckless or callous indifference."[55] Plaintiffs make no argument in their opposition to address Defendants' arguments.

---

[53] R. Doc. 42-1 at 26.
[54] *Williams v. Kaufman County*, 353 F.3d 994, 1015 (5th 2003) (internal quotations omitted).
[55] *Id.* at 27.

Given the absence of any factual allegations suggesting that Defendants acted with evil intent or reckless indifference—particularly in light of Plaintiffs' failure to respond—the dismissal of the punitive damages claim is warranted.

### c. Immunity Under La. R.S. 9:2798.1 as to State Law Claims

Defendants argue that Plaintiffs' state law wrongful death claims should be dismissed because they are immune under La. R.S. 9:2798.1.[56] Plaintiffs' do not address this argument in their Opposition.

La. R.S. 9:2798.1 provides that public officers are immune from liability for policymaking or discretionary acts performed within the course and scope of their duties.[57] The statute excludes immunity for acts that are not reasonably related to a legitimate governmental objective or that constitute criminal, fraudulent, malicious, intentional, willful, reckless, or flagrant misconduct.[58]

The Fifth Circuit has held that dismissal under Rule 12(b)(6) is appropriate based on an affirmative defense only if the defense appears on the face of the complaint.[59] Therefore, a court can dismiss claims if there are sufficient facts on the face of a complaint to demonstrate entitlement to an affirmative defense.

The Fifth Circuit has expressly held that "the care administered and provided to prisoners involves discretion."[60] In *Rombach v. Culpepper*, the Fifth Circuit found that correctional officers' actions in providing medical care to inmates were

---

[56] R. Doc. 42-1 at 27.
[57] La. R.S. § 9:2798.1(B)
[58] La. R.S. § 9:2798.1(C).
[59] *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, NA, 467 F.3d 466, 470 (5th Cir. 2006); also see *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).
[60] *Rombach v. Culpepper*, 2021 WL 2944809, at *10 (5th Cir. 2021) (internal quotations omitted).

discretionary under La. R.S. 9:2798.1 and did not amount to the level of misconduct necessary to overcome immunity.[61]

Defendants argue that the alleged acts and omissions regarding Thomas' medical care fall within the scope of their duties as jailers and therefore qualify as discretionary acts under La. R.S. 9:2798.1.[62] Plaintiffs' Complaint alleges that Oliver, Orsborn, and Bernstine informed Nurse George about Thomas' complaints of pain on the night of November 9, 2022, and again on the morning of November 10, 2022. Nurse George examined Thomas, provided medication, and scheduled him to see a doctor the next day.

The facts alleged do not support a finding that Defendants' actions were unreasonable or that they constituted criminal, intentional, willful, or reckless misconduct. The complaint shows that Defendants reported Thomas' complaints to a medical professional, who treated him and arranged further care. Plaintiffs' allegations, taken as true, describe conduct consistent with discretionary medical care rather than misconduct rising to the level necessary to overcome immunity.

Accordingly, this request in the Motion is **GRANTED**, and dismissal of Plaintiffs' state law wrongful death claims is warranted.

### IV.    CONCLUSION

For the foregoing reasons, Michael Oliver, Tawana Bernstine, and Christopher Orsborn's Motion for Judgment on the Pleadings (R. Doc. 42) is **GRANTED**. Accordingly,

---

[61] *Id.*
[62] R. Doc. 42-1 at 28–29.

**IT IS HEREBY ORDERED** that all of Plaintiffs' federal claims against Michael Oliver, Tawana Bernstine, and Christopher Orsborn in their individual capacity, punitive damages, and state law claims are dismissed with prejudice.

**THUS DONE AND SIGNED** this 27th day of March, 2025.


**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**