UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SHAMEKA GRANT THOMAS ET AL | CIVIL ACTION NO. 23-1614 |
| VERSUS | JUDGE EDWARDS |
| STUART WRIGHT ET AL | MAG. JUDGE PEREZ-MONTES |

MEMORANDUM RULING

Before the Court is a Motion for Judgment on the Pleadings filed by Defendant Sheriff Stuart Wright ("Wright" or "Sheriff Wright").[1] Plaintiffs filed an opposition to this motion.[2] Wright then replied.[3]

**I.   BACKGROUND**

Carlos Thomas ("Thomas" or "Decedent") became an inmate at the Natchitoches Parish Detention Center ("NPDC") on October 14, 2022.[4] Kathy Childress ("Nurse Childress" or "Childress") conducted an intake screening of Thomas and recorded his blood pressure of 151/106.[5] Thomas did not report any medical problems during intake.[6]

On November 9, 2022, Thomas reported chest and back pain.[7] Lieutenant Michael Oliver ("Lieutenant Oliver" or "Oliver") and Deputy Tawana Bernstine ("Deputy Bernstine" or "Bernstine"), who are employed by Sheriff Wright at the

---

[1] R. Doc. 30.
[2] R. Doc. 34.
[3] R. Doc. 41.
[4] R. Doc. 1 at ¶ 14.
[5] *Id.*
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶ 19.

Natchitoches Parish Law Enforcement District ("NPLED"), were called to the L-dorm of the NPDC to assist Thomas.[8] NPLED is responsible for the operation of NPDC.[9] Oliver and Bernstine reported Thomas' complaint to nurse Lisa George ("Nurse George" or "George") who gave Thomas an ibuprofen.[10] That night, other inmates in Thomas' dorm attempted to soothe his pain by applying pressure to and massaging Thomas' back.[11] Sometime during that night, Thomas also reported his chest pain to Christopher Orsborn ("Deputy Orsborn" or "Orsborn"), another deputy with NPLED.[12]

On November 10, 2022, Nurse George gave Thomas a Tylenol and told him to rest.[13] Nurse George had Thomas place a "sick call" to explain what was ailing him since he was scheduled to see a doctor that day.[14] In the call, Thomas reported he had "bad spasms, really, really bad!"[15] Later that morning, around 10:00 a.m., Plaintiff Shameka Thomas, having been advised of Thomas' condition, called NPDC and spoke to nurse Willie Clark ("Nurse Clark" or "Clark").[16] Nurse Clark then assessed Thomas, palpating his back and ribcage and finding it tender to the touch.[17] Nurse Clark called Dr. Otis Barnum's office, and Dr. Barnum ("Barnum" or "Dr. Barnum") ordered the administration of steroids and set an appointment to see Thomas after

---

[8] *Id.*
[9] *Id.* at ¶ 5.
[10] *Id.* at ¶¶ 20–21.
[11] *Id.* at ¶ 23.
[12] *Id.* at ¶ 24.
[13] *Id.* at ¶ 25.
[14] *Id.* at ¶ 26.
[15] *Id.* at ¶ 27.
[16] *Id.* at ¶ 28.
[17] *Id.* at ¶ 29.

lunch.[18] Later that morning, Thomas was found unresponsive.[19] EMS was called by jail staff, and Thomas was transported to Natchitoches Regional Medical Center, where Thomas was pronounced dead.[20] An autopsy found that Thomas died from "massive exsanguination due to aortic dissection."[21]

Plaintiffs in this action are the surviving spouse of Carlos Thomas—Shameka Grant Thomas—and his children—Devin White, Carnikqua Thomas, and Arniquia Harden o/b/o minor child Carden Harden (collectively "Plaintiffs").[22] Plaintiffs named NPLED, Sheriff Wright, Dr. Barnum, Oliver, Orsborn, Bernstine, Childress, George, and Clark as defendants. Sheriff Wright, Childress, George, Clark, Bernstein, Oliver, and Orsborn filed an answer in which they asserted qualified immunity.[23] Those defendants then filed a motion asking this Court to require Plaintiffs to file a reply addressing qualified immunity under Rule 7(a),[24] and the Court granted that motion.[25] Sheriff Wright filed the instant Motion for Judgment on the Pleadings on March 28, 2024.[26]

The claims against Sheriff Wright are contained in Count II and Count V of Plaintiffs' Complaint.[27] Count II of the Complaint asserts that under 42 U.S.C. § 1983 Sheriff Wright and Dr. Barnum, in both their individual and official capacities, were responsible for formulating and executing policies regarding the custody, care, and

---

[18] *Id.* at ¶¶ 29–30.
[19] *Id.* at ¶ 31.
[20] *Id.* at ¶ 32.
[21] *Id.* at ¶ 33.
[22] *Id.*
[23] R. Doc. 23.
[24] R. Doc. 24.
[25] R. Doc. 26.
[26] R. Doc. 30.
[27] R. Doc. 1.

medical treatment of inmates at NPDC.[28] Plaintiffs allege these officials maintained policies, practices, and customs that directly contributed to Thomas' death.[29] Plaintiffs alleged these policies include failures in training, supervision, and implementation of procedures necessary to ensure inmates received proper medical evaluations and treatment.[30] Plaintiffs claim that the Sheriff and Dr. Barnum had actual or constructive knowledge that NPDC staff engaged in conduct that posed an unreasonable risk to detainees and that their failure to act resulted in the deprivation of Thomas' constitutional rights.[31] Plaintiffs argue that Thomas' right to necessary medical care was clearly established, and his death was a direct result of these unconstitutional policies and failures.[32] Count V of the Complaint contains a wrongful death claim against NPLED, Sheriff Wright, and Dr. Barnum in both their individual and official capacities.[33] Plaintiffs allege that these defendants had a duty to ensure Thomas' safety and provide him with necessary medical care, including transporting him to a hospital when needed.[34] Plaintiffs claim that Sheriff Wright and Dr. Barnum failed to adequately train, supervise, and instruct NPDC officers (Oliver, Orsborn, and Bernstine – collectively, "Detention Defendants") and medical staff (Childress, George, and Clark – collectively "Nursing Defendants") in proper inmate evaluations and medical procedures.[35] Plaintiffs argue that these defendants'

---

[28] *Id.* at 9–12.
[29] *Id*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 16–18.
[34] *Id.*
[35] *Id.*

actions and omissions constituted gross negligence and recklessness, resulting in a preventable loss of life.[36] Plaintiffs also request punitive damages be awarded.[37]

## II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[38] "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[39] According to the Fifth Circuit, the standard for deciding a Rule 12(c) motion for judgment on the pleadings "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[40] In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[41] Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings but "may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."[42] The Court can also "take judicial notice of matters that are of public record, including pleadings

---

[36] *Id.*
[37] *Id.* at ¶ 68.
[38] Fed. R. Civ. P. 12(c).
[39] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted).
[40] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).
[41] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[42] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x. 336, 340 (5th Cir. 2011).

that have been filed in a federal or state court."[43] The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed liberally."[44]

### III. LAW & ANALYSIS

In the Motion *sub judice*, Sheriff Wright is requesting that all of Plaintiffs' claims against him in his individual capacity be dismissed. First, Wright asserts that Plaintiffs' federal claims against him are barred because Wright is entitled to qualified immunity.[45] Next, Wright asserts that any claims against him in his individual capacity for punitive damages fail because Plaintiffs fail to show Wright acted with the requisite mental state.[46] Finally, Wright asserts that Plaintiffs' state law wrongful death against him are likewise barred as Wright is entitled to immunity under La. R.S. 9:2798.1.[47] The Court will analyze each issue in turn.

#### a. Qualified Immunity and Deliberate Indifference

A Section 1983 suit may be brought against a party in that party's official or personal capacity.[48] A Section 1983 personal-capacity suit seeks to impose liability on a "government officer for actions taken under color of state law."[49] In this case, Plaintiffs sued Sheriff Wright in his official and personal capacity. Sheriff Wright, along with defendants, filed a separate motion to dismiss the official claims against them,[50] and the Court addresses that motion in a separate ruling. This ruling will

---

[43] *In re American Intern. Refinery*, 402 B.R. 728, 749 (Bankr. W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[44] *Great Plains*, 313 F.3d at 312 (citation and internal quotation marks omitted).
[45] R. Doc. 30 at 2–3.
[46] *Id.* at 3.
[47] *Id.*
[48] *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).
[49] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).
[50] R. Doc. 21.

focus its scope to the Section 1983 and state law claims brought against Sheriff Wright in his personal capacity.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."[51] Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.[52] "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."[53]

The doctrine of qualified immunity protects government officials from being sued in their personal capacity.[54] "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[55] Courts may exercise their discretion in deciding which prong of the qualified immunity analysis to address first.[56]

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8."[57] Instead, "a plaintiff seeking to

---

[51] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).
[52] *Id.*
[53] *Id.* (citation omitted).
[54] *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).
[55] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).
[56] *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).
[57] *Arnold, supra* (citation omitted).

overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[58] In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[59]

In his Motion, Sheriff Wright claims that Plaintiffs have failed to establish either that Wright is personally liable because of his personal actions or that he is liable under a theory of supervisory liability.[60] Defendant Wright asserts that Plaintiffs "make no allegation whatsoever that Sheriff Wright personally played any role in any of the events with respect to Thomas."[61] After a review of Plaintiffs' opposition and the Complaint, the Court agrees. After analyzing Counts II and V of the Complaint and the Rule 7(a) Reply, it is clear the Plaintiffs make no allegations that Sheriff Wright was personally involved in any alleged deprivation of a constitutional right. All allegations made by Plaintiffs against Wright pertain to the hiring and training of those who were directly involved. To assert liability for such hiring and training, the Plaintiffs will need to establish supervisory liability under Section 1983.

Accordingly, the Court moves to an assessment of any alleged supervisory liability claims. In a Section 1983 claim for failure to supervise or train, a plaintiff

---

[58] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[59] *Arnold, supra* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard").
[60] R. Doc. 30-1 at 6.
[61] *Id.*

must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[62] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[63] To establish deliberate indifference, "a plaintiff usually must demonstrate a *pattern* of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."[64] Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability.[65]

Ultimately, Plaintiffs have not shown that Sheriff Wright acted with deliberate indifference thus failing to set forth a Section 1983 claim against him. Plaintiffs admit there was a medical standing order regarding hypertension written by Dr. Barnum[66] and do not allege a *pattern* of violations or deficiencies in how the Nursing Defendants or Detention Defendants were trained or supervised. Plaintiffs merely state that some violations must have existed and that those violations result from Sheriff Wright's failure to train.[67] This is not enough to carry Plaintiffs' burden of showing deliberate indifference which requires a pattern of violations. In their Opposition, Plaintiffs state "discovery is necessary to discern specific patterns of similar

---

[62] *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998).
[63] *Id.* at 912 (internal quotation omitted).
[64] *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted) (emphasis added).
[65] *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir. 2005).
[66] R. Doc. 1 at ¶ 18.
[67] R. Doc. 34 at 16–17.

constitutional violations and the extent to which any possible failures in training were responsible for Thomas's death."[68] The Fifth Circuit has stated, "[t]he Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without *any* discovery . . . where the pleadings are insufficient to overcome QI, the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery."[69]

The Court issued an order requiring Plaintiffs to "file a Rule 7(a) reply that is tailored to specifically address the defendants' assertion of qualified immunity."[70] That Rule 7(a) Reply was the opportunity for Plaintiffs to sufficiently plead facts to overcome qualified immunity. However, in their Rule 7(a) Reply, Plaintiffs do not allege *how* Wright failed to supervise or train those at NPDC involved with Thomas' care nor do they allege facts to demonstrate that that such a failure amounted to deliberate indifference (i.e., no pattern of violations is alleged). The 7(a) Reply states "the policies regarding the custody, care, and safekeeping of the inmates are at issue, including the Standard Operating Procedures and Medical Protocols, and whether said policies, practices and customs were a direct and proximate cause of the unconstitutional conduct of George, Clark, Oliver, Bernstine and Orsborn for which the Sheriff is liable."[71] However, the 7(a) Reply does not assert facts to demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. Because demonstrating

---

[68] R. Doc. 34 at 17–18.
[69] *Carswell v. Camp*, 54 F.4th 307, 311-312 (5th Cir. 2022) (emphasis in original).
[70] R. Doc. 26.
[71] R. Doc. 29 at 12.

deliberate indifference requires a demonstration by Plaintiffs of a pattern of violations and both the Complaint and Rule 7(a) Reply are devoid of such allegations, Plaintiffs' failure to supervise/train claims against Sheriff Wright in his personal capacity fail. The Motion's request to dismiss these claims against Wright is **GRANTED**.

As Plaintiffs' Section 1983 claims fail because they have not shown deliberate indifference, the Court forgoes an analysis of the remaining two prongs of supervisory liability.

### b. Punitive Damages Claims

In his Motion, Sheriff Wright argues that Plaintiffs cannot recover punitive damages against him in his individual capacity because their allegations fail to show conduct that meets the standard for such an award.[72] Wright then cites to *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) for the Fifth Circuit's holding that "punitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights."[73] Plaintiffs do not address this argument in their Opposition, and Wright underscores their lack of response in his reply.[74]

Because the Court has dismissed all Section 1983 claims against Sheriff Wright, any claim for punitive damages under those claims is moot. Moreover, even if the Section 1983 claims had not been dismissed, the absence of any allegations

---

[72] R. Doc. 30-1 at 23.
[73] *Id.*
[74] R. Doc. 41 at 5.

suggesting that Sheriff Wright acted with evil intent or reckless indifference—particularly in light of Plaintiffs' failure to respond—would still warrant dismissal of the punitive damages claim.[75] Accordingly, this request in the Motion is **GRANTED**.

### c. Immunity to State Law Claims Under La. R.S. 9:2798.1

Sheriff Wright argues that Plaintiffs' state law wrongful death claims should be dismissed because he is immune under La. R.S. 9:2798.1.[76] Wright contends that Plaintiffs' allegations concern discretionary or policymaking functions—such as hiring, training, and supervision—which fall squarely within the scope of the immunity statute.[77]

Plaintiffs oppose the Motion, arguing that La. R.S. 9:2798.1 immunity is not appropriately resolved at the motion to dismiss stage.[78] Relying on federal district court cases, Plaintiffs contend that discretionary function immunity is generally not available prior to factual development and should not serve as a basis for dismissal at this juncture.[79] Plaintiffs do not dispute that Sheriff Wright asserts discretionary policymaking decisions as the basis for his immunity claim but maintain that dismissal is premature.[80]

In his reply, Sheriff Wright reiterates that Louisiana courts have dismissed claims at the pleadings stage based on La. R.S. 9:2798.1 and that federal courts,

---

[75] The Court also underscores that Sheriff Wright's hiring of medical staff, the scheduling of a medical examination for Thomas shortly after his complaints of pain, and the NPLED's standing orders in place regarding hypertension undercut a claim that Sheriff Wright acted with evil intent or reckless indifference.
[76] R. Doc. 30-1 at 24.
[77] *Id.* at 25.
[78] R. Doc. 34 at 18–19.
[79] *Id.*
[80] *Id.*

including the Fifth Circuit, have affirmed dismissals where immunity appears on the face of the complaint.[81] Wright further argues that Plaintiffs fail to rebut the characterization of the alleged acts as discretionary and do not offer an alternative basis for overcoming immunity.[82]

The core dispute here is whether La. R.S. 9:2798.1 discretionary function immunity can be resolved at the motion to dismiss stage. The Fifth Circuit has held that dismissal under Rule 12(b)(6) is appropriate based on an affirmative defense only if the defense appears on the face of the complaint.[83] Therefore, a court can dismiss claims if there are sufficient facts on the face of a complaint to demonstrate entitlement to an affirmative defense. Here, Sheriff Wright asserts statutory immunity under La. R.S. 9:2798.1, which provides that public officers are immune from liability for policymaking or discretionary acts performed within the course and scope of their duties.[84] However, the statute excludes acts that are not reasonably related to a legitimate governmental objective or that constitute criminal, fraudulent, malicious, intentional, willful, reckless, or flagrant misconduct.[85]

Sheriff Wright avers that his immunity arguments under the statute are "all based on the facts alleged in Plaintiff's Complaint and FRCP 7(a) Reply."[86] It is undisputed that Sheriff Wright is an officer of a public entity, so the remaining question is whether the Complaint, on its face, establishes that his actions were

---

[81] R. Doc. 41 at 5–8.
[82] *Id.*
[83] *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, NA, 467 F.3d 466, 470 (5th Cir. 2006); also see *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).
[84] La. R.S. § 9:2798.1(B)
[85] La. R.S. § 9:2798.1(C).
[86] R. Doc. 41 at 7.

discretionary policymaking functions within the scope of his duties. There are two actions for which Plaintiffs are attempting to assert Wright's liability over: (1) his hiring, training, and supervision of the Nursing and Detention Defendants and (2) the implementation of medical policies and procedures at NPDC.[87] Each of those claims involves a failure to hire, train, supervise, or implement medical policies— functions that Louisiana law recognizes as discretionary.[88] Because Plaintiffs' Complaint, on its face, alleges actions that constitute discretionary policymaking within the scope of Sheriff Wright's duties, La. R.S. 9:2798.1 immunity applies. Furthermore, Plaintiffs allege no facts in their Complaint (nor do they make an argument in their Opposition) to show Sheriff Wright's actions were not related to a legitimate governmental objective or that they constituted criminal, fraudulent, malicious, intentional, willful, reckless, or flagrant misconduct. Accordingly, this request of the Motion is **GRANTED**.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Stuart Wright's Motion for Judgment on the Pleadings (R. Doc. 30) is **GRANTED**. Accordingly,

**IT IS HEREBY ORDERED** that all of Plaintiffs' federal claims against Stuart Wright in his individual capacity, punitive damages claims, and state law claims are dismissed with prejudice.

**THUS DONE AND SIGNED** in Chambers this 27th day of March, 2025.

---

[87] R. Doc. 1 at 17–18.
[88] *See Smith v. Lafayette Par. Sheriff's Dept.*, 874 So. 2d 863, 867–868 (La. Ct. App. 3d Cir. 2004); *Hoffpauir v. Columbia Cas. Co.*, 2013 WL 5934699 at *12–13 (M.D. La. 2013); also see *Rombach v. Culpepper*, 2021 WL 2944809 at *9–10 (5th Cir. 2021).

_[signature: Jerry Edwards, Jr.]_

JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE